IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| RAUL SUAREZ RAMIREZ, | |
| Plaintiff, | CIVIL ACTION NO.: 5:19-cv-14 |
| v. | |
| CHAPLAIN SAMUEL EASON; and E. DYE, | |
| Defendants. | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. Doc. 20. For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Plaintiff *in forma pauperis* status on appeal.

### BACKGROUND

Plaintiff brought this action relating to his religious practices while incarcerated at D. Ray James Correctional Facility ("the Facility").[1] Doc. 1. After conducting the requisite frivolity review, the Court dismissed all of Plaintiff's claims against Defendants D. Ray James Private Institution, Geo Group, Inc., Chalmers, Jones, Wilper, Staines, Leuger, Norman, Irre, Goodwin, Sprulles, Jeffers, O'Quinn, and Kossakwski. Doc. 7. However, the Court directed service of Plaintiff's Complaint, which it construed as stating First Amendment claims against Defendants Eason and Dye. Id. Thus, the only claims pending at this time are First Amendment claims

---

[1] When conducting frivolity review, the Court inadvertently stated Plaintiff's claims arise under 42 U.S.C. § 1983 claim. Given that D. Ray James Correctional Facility is a private prison run by The GEO Group, which contracts with the Bureau of Prisons, the claim would properly be asserted under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), instead.

against Defendants Eason and Dye. Specifically, Plaintiff's First Amendment claims are based on Defendants': (1) provision of non-kosher grape juice during Passover in 2018; (2) provision of meals prepared in a non-kosher kitchen during Passover in 2018; (3) provision of foods that were past their "best by" or "sell by" dates; and (4) denial of Plaintiff's request to participate in Second Passover, or Pesach Sheni.

Defendants Eason and Dye now move for summary judgment. Doc. 20. Plaintiff filed a Response brief which consists of an affidavit he declares under penalty of perjury. Doc. 29. The Court also considers the attachments submitted with Plaintiff's Complaint for purposes of the summary judgment record, doc. 1-2, although they do little to affect the Court's analysis.

## UNDISPUTED MATERIAL FACTS[2]

During the time period at issue in this lawsuit, Plaintiff Raul Suarez Ramirez was incarcerated at D. Ray James Correctional Facility. Doc. 20-1 at 1. In 2018, Plaintiff was recognized as an observant Jew and was designated to receive kosher meals during Passover. Id. at 4.

In April 2018, Defendant Evangeline Dye was employed by The GEO Group, Inc. ("GEO") as the Food Service Manager at the Facility. Id. As the Food Service Manager, Defendant Dye was responsible for, among other things, ordering and distributing religious accommodation meals to the appropriate inmates housed at the Facility. Id. This includes the distribution of kosher meals for Passover to the inmates who have been designated to receive such meals. Id. Regarding kosher meals for Passover, the Facility Chaplain identifies and provides Defendant Dye with the number of inmates who are to receive those meals. Id. The GEO corporate Food Service Department determines the specific kosher Passover menu and the

---

[2] All of the material facts Plaintiff has not addressed in his Response are deemed admitted under this Court's Local Rules. Local R. 56.1.

vendor from which the meals are to be ordered. Id. In 2018, the kosher meals for Passover were ordered from Alle Processing, which prepares and packages the specific kosher Passover meals in a kosher kitchen and has them delivered to the Facility. Id.; Doc. 20-3 at 8.

As the Facility Food Service Manager, Defendant Dye placed the order for the appropriate amount of meals based on the number of participating inmates identified by the Chaplain. Doc. 20-1 at 2. The kosher Passover food is not physically prepared at the Facility, but the Facility does have a kosher kitchen. Id. After the kosher meals for Passover arrive from Alle Processing, the meal trays are prepared in the Facility's kosher kitchen before being distributed to the inmates. Id. The Facility designates a microwave, knife, and cutting board exclusively for the pre-prepared kosher for Passover meals. Id. Also, the kosher kitchen receives daily cleaning of both the oven and food preparation surfaces using cleaning supplies kept separate for cleaning of the kosher kitchen only. Id.

In April 2018, Defendant Samuel Eason was employed by GEO as the Chaplain at the Facility. Id. at 3. As the Chaplain, Eason is responsible for identifying the number of inmates to receive kosher Passover meals. Id. But he is not otherwise directly involved in the purchasing, preparation, or distribution of inmate religious accommodation meals. Id. Defendant Eason is not involved in setting the Facility's kosher Passover menu, as that is done by GEO at the corporate level. Id.

Plaintiff was able to participate in the initial Passover Seder and other Passover services in 2018. Id. Specifically, during Passover 2018 (March 30–April 7), Plaintiff was provided kosher for Passover meals, pursuant to the GEO Passover menu. Id. at 3. On one occasion during the 2018 Passover, the Facility Food Service ran out of kosher grape juice to be served with the meals. Id.; Doc. 29 at 2. On that date, Defendant Dye went to the local Publix

3

supermarket and purchased grape juice she thought was kosher compliant but actually was not. Doc. 20-1 at 3; Doc. 29 at 2.  At some point after returning, Defendant Dye told Defendant Eason about what had happened.  Doc. 20-1 at 3.  Eason told Dye he had additional kosher grape juice to serve the inmates instead.  Id.  Defendant Dye believes she only provided the kosher grape juice to inmates, but, to the extent any of the non-kosher compliant juice was served to inmates, Dye did not intentionally serve that juice.  Id.

Despite participating in the initial Passover Seder and other Passover services, Plaintiff requested he be permitted to also observe Second Passover, or Pesach Sheni.  Id. at 4.  Pursuant to the Bureau of Prisons' religious practices guidelines for Judaism, Pesach Sheni or Second Passover is not listed as an observed holiday.  Id.  Pesach Sheni is an observance that allows a person who was unable to participate in the initial Passover offering to do so a month later.  Id.

Plaintiff has raised issues concerning the provision of food items after the marked "best by" or "sell by" dates.  It is undisputed that occasionally at the D. Ray James Correctional Facility inmates received food products beyond their marked "best by" or "sell by" dates, but inmates were never served spoiled or rotten food.  Id.; Doc. 29 at 1–2.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, there must exist a conflict in substantial evidence to pose a jury question."  Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)). "If the evidence [produced by the nonmoving party] is merely colorable or is not significantly probative summary judgment must be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 249 (1986) (citations omitted).

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). Once the party moving for summary judgment satisfies its initial burden, the burden shifts to the non-moving party to come forward with specific facts showing a genuine dispute for trial. Hinson v. Bias, 927 F.3d 1103, 1115 (11th Cir. 2019). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

## II.    Analysis

Despite their incarceration, inmates must be afforded a "reasonable opportunity" to exercise their religious freedom. Cruz v. Beto, 405 U.S. 319, 322 (1972). In order to sustain a First Amendment claim, a prisoner must be able to show his ability to practice his faith was

5

substantially burdened.  See Holt v. Hobbs, 574 U.S. 352, 357–58 (2015); Robbins v. Robertson, 782 F. App'x 794, 801 (11th Cir. 2019).  A "substantial burden" is "akin to significant pressure which directly coerces the religious adherent to conform his or her behavior . . . ." Thai Meditation Ass'n of Ala., Inc. v. City of Mobile, 980 F.3d 821, 831 (11th Cir. 2020) (quoting Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214 (11th Cir. 2004)).  While a substantial burden must amount to more than an incidental effect or mere inconvenience, a substantial burden can result from government action that pressures the adherent to modify his religious conduct.  Id.  Additionally, prison regulations challenged under the First Amendment are subject to a more deferential reasonableness test even when they impose a substantial burden. Davila v. Gladden, 777 F.3d 1198, 1212 (11th Cir. 2015).

Absent evidence supporting a de facto policy of deviating from free-exercise-compliant policies or an inference of intentional conduct, a prison official's negligent failure to implement an existing policy designed to accommodate religious beliefs is insufficient to establish a Free Exercise Clause violation under § 1983.  Mbonyunkiza v. Beasley, 956 F.3d 1048, 1054–55 (8th Cir. 2020); Lovelace v. Lee, 472 F.3d 174, 198–99 (4th Cir. 2006).  Regarding § 1983 liability generally, the United States Supreme Court has stated, "[D]epending on the right, merely negligent conduct may not be enough to state a claim." Daniels v. Williams, 474 U.S. 327, 330 (1986) (emphasis added).

In Daniels, a prisoner sought to recover damages for injuries allegedly sustained when he fell on a prison stairway after slipping on a pillow negligently left by a guard on that stairway. Id. at 328.  The Supreme Court concluded the "Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." Id. (emphasis in original).  However, the Court in Daniels did not discuss the state of mind required

6

to sustain a Free Exercise Clause claim. The Eleventh Circuit has also not specifically addressed what state of mind is required to impose § 1983 free exercise liability. See Davila, 777 F.3d at 1212 (discussing the substantial burden standard and reasonableness test as applied to a challenged regulation); Muhammad v. Sapp, 388 F. App'x 892 (11th Cir. 2010) (discussing the "reasonableness test" applied to prison regulations but finding defendants were entitled to qualified immunity without fully analyzing the First Amendment claim). The Eighth, Tenth, and Fourth Circuit Courts of Appeals require something more than isolated acts of negligence. Mbonyunkiza, 956 F.3d 1048 at 1054–55; Gallagher v. Shelton, 587 F.3d 1063, 1070–71 (10th Cir. 2009) (affirming the dismissal of an inmate's claim kosher utensils were contaminated because, despite evidence prison officials might have "imperfectly implemented the kosher requirements, or were even negligent," there was "no basis to conclude that any of the defendants deliberately contaminated the kosher utensils"); Lovelace, 472 F.3d at 198–99.

For example, in Mbonyunkiza, the Eighth Circuit Court of Appeals considered whether the service of multiple pork containing meals to a Muslim prisoner created a genuine dispute as to a Free Exercise Clause violation. 956 F.3d 1048. Partially relying on the word "prohibit" within the Free Exercise Clause and Daniels, the court reasoned isolated mistakes are insufficient to impose § 1983 liability. Id. at 1054–55. The court held correction officials could not be held liable for a negligent failure to implement food policies designed to accommodate the plaintiff's religious beliefs. Id. The court noted "evidence of pervasive 'mistakes' might support a claim that [the facility] had a de facto policy of ignoring or deviating from its free-exercise compliant policies, [but] no such evidence was presented here." Id. at 1055. Similarly, in White v. Jackson, a district court examined misapplied policies where a prison medical administrator mistakenly believed inmates needed a certain pass to participate in a Ramadan-compliant pill

7

call. No. 2:16-cv-597, 2017 WL 2963862, at *8 (E.D. Va. Jun. 28, 2017). The court found the plaintiff had produced no evidence the administrator ever suspected she was wrong in her policy application, and thus, produced no evidence her conduct was willful or more than merely negligent. Id.

On the other hand, the Fourth Circuit Court of Appeals did find a genuine dispute of material fact existed as to a prisoner's free exercise claim when a prison guard's actions raised an inference of intentional conduct. Lovelace, 472 F.3d at 195–96, 201–202. In Lovelace, a prison guard said he saw an inmate take a food tray during the Ramadan fast, resulting in the revocation of that inmate's religious diet. Id. at 195. In an incident report and in conversations with superiors, the guard repeatedly affirmed he had seen the inmate take a food tray. Id. After the initiation of a lawsuit, the guard submitted an affidavit saying he had mistakenly misidentified an inmate with the same name. Id. But in a second affidavit, the guard changed his story and said he simply confused the plaintiff-inmate with another inmate. Id. However, the record showed the guard had significant close contact with the plaintiff-inmate, which contradicted the guard's claim he simply misidentified the inmate. Id. The implausibility of the guard's story, along with his changing narrative, cast serious doubt on whether the guard made an honest mistake. Id. The Fourth Circuit held a defendant must consciously or intentionally interfere with a prisoner's First Amendment rights to be liable under § 1983, but those facts raised a genuine dispute as to whether the guard intentionally deprived the inmate of his religious diet. Id. at 201–202. The Court considers Defendants Dye and Eason's Motion with these principles in mind.

A.   **Defendant Dye**

Plaintiff's First Amendment claim against Defendant Dye is based, in part, on the allegation Dye failed to provide kosher Passover meals in 2018. Though the precise contours of

Plaintiff's allegation is difficult to discern, his complaint seems to be the 2018 Passover meals were not prepared in facilities that satisfied all kosher requirements.

In their Motion, Defendants show the 2018 kosher Passover meals were assembled and delivered by an outside company. Indeed, Defendants have submitted an invoice from March 2018 showing the purchase of Passover items from Alle Processing. Doc. 20-3 at 8. Additionally, Defendants demonstrate, once the kosher meals were received from Alle Processing, meal trays were prepared at the Facility in a kosher kitchen that substantially complies with all kosher requirements. Id. at 3. Plaintiff has not pointed to any evidence that would create a genuine dispute about any of these facts. Plaintiff does not dispute the meals were prepared offsite by Alle Processing or that preparation was in compliance with kosher requirements. In his affidavit, Plaintiff suggests Defendant Dye opened the delivered kosher meals within the same kitchen as regular meals, doc. 29 at 1, but Plaintiff does not purport to have any personal knowledge regarding where the meals were prepared for distribution to the inmates and cites to no evidence to support this allegation. In fact, Plaintiff arguably concedes he does not know where the meals were prepared when he says, "Ms. Dye state the Facility doesn't have a kosher kitchen make me understand how Ms. Dye was [sic] distribute all[] meal, cheese with meat, at other time [sic] . . . . " Id. at 1. Plaintiff's unsupported, conclusory allegations, which are not based on first-hand knowledge, are insufficient to create a genuine dispute of material fact for trial. Therefore, Defendant Dye is entitled to summary judgment on this portion of Plaintiff's First Amendment claims because no reasonable jury could find she violated Plaintiff's First Amendment rights based on these undisputed facts.

Plaintiff also challenges Defendant Dye's provision of non-kosher grape juice during Passover. Doc. 29 at 1. Defendants argue Plaintiff cannot show the consumption of non-kosher

grape juice substantially burdened his religion and any distribution of the grape juice that did occur amounts to, at most, a negligent mistake by Defendant Dye.  Doc. 20-2 at 7–8.

Plaintiff has not explained or presented any evidence tending to show the consumption of non-kosher grape juice substantially burdened his religious exercise.  Construing the facts in the light most favorable to Plaintiff, he was served non-kosher grape juice, at most, on a few occasions.[3]  Plaintiff has failed to show how the consumption of non-kosher grape juice on a limited number of occasions violated the tenets his religion, much less imposed a substantial burden on his religious exercise.

Additionally, in her affidavit, Defendant Dye states she does not think any of the non-kosher grape juice was actually distributed to inmates because she believes she spoke with Defendant Eason regarding the issue prior to serving it.  Doc. 20-3 at 4.  She then explains, "However, to the extent the store-bought grape juice was distributed to the inmates, it was because I mistakenly believed the grape juice was kosher for Passover compliant at the time of distribution.  I did not intentionally attempt to serve the kosher for Passover inmates non-kosher grape juice."  Id.  Plaintiff has not produced any evidence to the contrary.  Indeed, there is nothing in the record that suggests the provision of non-kosher grape juice was anything more than negligent.  In his affidavit, Plaintiff makes a conclusory assertion that Defendant Dye acted intentionally by serving the juice but provides no support for the allegation.  Doc. 29 at 3.  Plaintiff has not presented facts which would create an inference of intentional conduct.  Lovelace, 472 F.3d at 198–99.  Plaintiff has also failed to point to any evidence to suggest there

---

[3]  In his affidavit, Plaintiff states non-kosher grape juice was served from April 3 through April 7, 2018.  Doc. 29 at 2.  With his Complaint, Plaintiff submitted a copy of a Welch's 100% Concord Grape Juice label.  Doc. 1-2 at 15.  However, there is no evidence showing when or if this Welch's grape juice was given to Plaintiff.  In his affidavit, Plaintiff states the brand of juice improperly served to him was "Juicy Juice grape."  Doc. 29 at 2.  Defendants have not submitted any evidence showing what brand of juice Defendant Dye purchased.

was a de facto policy of deviating from kosher requirements.  Mbonyunkiza, 956 F.3d at 1054–55.  He only asserts the non-kosher grape juice was served during 2018 Passover.  Doc. 29 at 1.  Because Plaintiff has failed to show any substantial burden on his religious exercise and has failed to show Defendant Dye's provision on non-kosher grape juice was anything more than negligent, Defendants are entitled to summary judgment on this portion of Plaintiff's First Amendment claim.

Plaintiff also asserts Defendant Dye served beef bouillon cubes past their "best by" date during Passover.  Doc. 29 at 1–2.  It is unclear how this fact relates to Plaintiff's religious exercise.  If Plaintiff intended to assert an Eighth Amendment claim as part of this suit based on the distribution of bouillon cubes past their "best by" date, this allegation would be insufficient to prove a violation of the Cruel and Unusual Punishment Clause.  Plaintiff has produced no evidence tending to show the cubes were harmful or unfit for consumption solely because they were served past the "best by" or "sell by" date.  Moreover, Plaintiff has only stated these cubes were given to him on couple of isolated occasions.  See Rodriguez v. Bryson, No. 5:17-cv-10, 2019 U.S. Dist. LEXIS 152205, at *59–60 (M.D. Ga. July 10, 2019) (recommending grant of summary judgment because three incidents of foreign objects in prison food were insufficient).  Consequently, Defendants are entitled to summary judgment on Plaintiff's claim regarding the provision of food after the marked "best by" or "sell by" date.

For the reasons stated above, I **RECOMMEND** the Court grant summary judgment in Defendant Dye's favor on all of Plaintiff's claims against her.

**B.     Defendant Eason**

Defendants have shown Defendant Eason is not directly involved with the purchasing, preparation, or distribution of religious meals, and Plaintiff has not disputed that fact.  Thus,

Plaintiff's claim against Defendant Eason involves his denial of Plaintiff's request to participate in Pesach Sheni or Second Passover.  See Doc. 1-1 at 4–5.

Defendants argue Plaintiff cannot show the denial of this request substantially burdened his religion.  Doc. 20-2 at 9.  In support of this argument, Defendants have submitted the Bureau of Prisons' policies relating to Judaism, which do not recognize Pesach Sheni as an observed Jewish holiday.  Doc. 20-4 at 37–51.  Rather, Pesach Sheni is an opportunity for those who were unable to participate in original Passover to do so a month later.  Id. at 4.  In his declaration, Defendant Eason explains he denied Plaintiff's request to participate in Pesach Sheni because Plaintiff had already participated in Passover Seder and other services in 2018, and Defendant Eason determined "further accommodation for him to observe Pesach Sheni was unnecessary." Id. at 4.

Plaintiff has failed to show why Defendant Eason's denial of his Pesach Sheni request substantially burdened his religion.  In fact, he does not discuss this request whatsoever in his response affidavit.  Doc. 29.  Plaintiff does not dispute Pesach Sheni is a holiday for those who could not celebrate original Passover.  He has not disputed he observed Passover in 2018.[4] Accordingly, no reasonable jury could find Defendant Eason violated Plaintiff's First Amendment rights.

For the reasons discussed above, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment.  Having recommended the entry of summary judgment in

---

[4] Plaintiff may believe he was unable to observe the initial Passover in 2018 because of the allegations against Defendant Dye (i.e., no kosher meals, the provision of non-kosher juice, and the provision food items past their "best by" and "sell by" dates).  If that is the case, the claim would fail.  As explained above, the allegations against Defendant Dye do not show Plaintiff's religious exercise was substantially burdened.

Defendants' favor on these grounds, the Court declines to address Defendants' argument Plaintiff is limited to nominal damages.[5]

### III.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

---

[5]     Defendant filed this Motion before the Eleventh Circuit Court of Appeals issued its decision in Hoever v. Marks, 993 F.3d 1353 (11th Cir. 2021), holding 42 U.S.C. § 1997e(e) of the Prison Litigation Reform Act permits punitive damages absent a showing of physical injury. It is unclear whether Defendants would continue to press their additional argument concerning nominal damages in light of the decision in Hoever.

Based on the above analysis of Plaintiff's claims and Defendants' Motion for Summary Judgment, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Plaintiff *in forma pauperis* status on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint or any other filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 4th day of August, 2021.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA